IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NANCY L. OSTROWSKI, PH.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 1:19-cv-2834 |
| ) | |
| THE BOARD OF TRUSTEES OF ) | |
| INDIANA UNIVERSITY, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT WITH JURY DEMAND**

Plaintiff Nancy L. Ostrowski, Ph.D., (hereinafter "Plaintiff" or "Dr. Ostrowski"), by counsel, for her complaint against Indiana University and the Trustees of Indiana University (hereinafter "Defendants" or ""Indiana University"), states and alleges:

**JURISDICTION AND VENUE**

1. This lawsuit arises out of Section 504 of the Rehabilitation Act, as amended. (29 U.S.C. § 794(a)).

2. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's lawsuit.

3. Venue is appropriate in the United States District Court for the Southern District of Indiana, Indianapolis Division, as the alleged unlawful and discriminatory practices against Dr. Ostrowski by Defendants Indiana University took place at the university's Bloomington, Indiana campus where Dr. Ostrowski was employed as Associate Director of the Kinsey Institute.

## PARTIES

4. Plaintiff Dr. Ostrowski is a citizen of the United States of America and of the State of Indiana, and has at all relevant times herein been employed at Indiana University's Bloomington, Indiana campus and has, for over twenty years, established residence in Hamilton County, Indiana.

5. At all relevant times herein Dr. Ostrowski has been an "individual with a disability" as defined at 29 U.S.C. § 705(20), protected from discrimination in her employment with Indiana University by Section 504 of the Rehabilitation Act's proscription against discrimination because of an individual's disability by institutions of higher education that are recipients of federal financial assistance.

6. Defendant Indiana University was created by the Indiana General Assembly as a state seminary (Founder's Day, January 20, 1820), which became Indiana College and was re-named Indiana University by legislative action on February 15, 1938.

7. Defendant the Trustees of Indiana University are the corporate governing board created by the state legislature to manage and conduct the business of the university.

8. At all relevant times herein, Defendant Indiana University has been an "institution of higher education" pursuant to 29 U.S.C. § 705(23) and 20 U.S.C. § 1002, and a recipient of federal financial assistance, and therefore prohibited from discriminating against an individual with a disability in said individual's employment with Indiana University.

## FACTUAL BACKGROUND

9. Plaintiff Dr. Ostrowski began working on the Bloomington campus of Indiana University on or about February 2, 2016 as the Associate Director of the Kinsey Institute. As the

Associate Director of the Institute, Dr. Ostrowski directly reported to her immediate superior, Dr. Sue Carter, who was the Director of the Kinsey Institute. Dr. Ostrowski supervised other employees and worked with all other collaborators of the Institute's mission. She lectured and gave talks regarding the Institute and its work. She oversaw contracts the Institute entered into regarding its work, such as agreements to loan parts of the Institute's "collections" to outside venues. She managed administrative tasks and represented the Director when the Director was absent. She wrote grant proposals to strengthen Kinsey Institute fund-raising efforts. She directed and supervised the outreach and education aspects of the Institute and implemented new programs among other responsibilities.

10. Dr. Ostrowski has a Bachelor of Arts degree (B.A.) in psychology. She has a Master of Science degree in Physiological Psychology. Her Doctoral Degree from the University of Pittsburgh is in Psychobiology. She completed over six years of additional neuroscience training as a Post-Doctoral Fellow and Senior Fellow at the National Institutes of Health. Prior to beginning her work at the Kinsey Institute, Dr. Ostrowski served in multiple global capacities at Eli Lilly and Company including women's health, business partnering, regulatory, and pharmaceutical safety. Her last position at Eli Lilly and Company in Indianapolis was as a global Clinical Research Adviser in the Global Medical - Product Safety organization. While in her employment with Eli Lilly and Company, Dr. Ostrowski developed a serious heart valve condition, necessitating cardiac surgery in 2010, and then again in 2015.

11. Following the 2015 heart valve surgery, Dr. Ostrowski suffered a serious impairment to her long-term memory and to the vision in her right eye. In addition, she also began suffering from degenerative arthritis in her hips and lower back, most severe in her right

hip where she had hemorrhaged severely after catheterization. Upon attempting to return to Eli Lilly, she found she was unable to walk the required distances, often greater than a mile each day (e.g., from the parking garage to her office; and from meeting to meeting in buildings separated by extensive walkways). She did not fully recover her physical stamina due to the combination of her cardiac issues and surgeries and her arthritis symptoms, which limited her walking, lifting, carrying and pulling her computer and corporate records from meeting to meeting. These physical limitations were far overshadowed by notable and subjectively severe memory loss. For ethical reasons she realized that she could no longer continue in her Lilly position being responsible for the decisions affecting the safety of patients treated with a dozen different pharmaceutical products worldwide. Dr. Ostrowski and Eli Lilly and Company agreed to mutually part ways, because of her serious impairments, effective February 1, 2016.

12.     Dr. Ostrowski was offered the opportunity to apply for the position of Associate Director of the Kinsey Institute by her long-time family friend, Dr. Sue Carter, who was the Director of the Kinsey Institute on Indiana University's Bloomington campus. Dr. Carter knew Dr. Ostrowski's excellent educational background, her scientific achievements, and her management skills from working at Eli Lilly and Company. She also knew about Dr. Ostrowski's serous health issues and the restrictions those health issues had placed upon Dr. Ostrowski.

13.     Dr. Ostrowski was given several reasonable accommodations on the Bloomington campus. To accommodate her inability to walk or climb stairs Dr. Ostrowski was granted an Indiana University handicap parking permit which allowed her to park several feet from the wheelchair ramp that led into Morrison Hall where Dr. Ostrowski's office and a substantial

portion of the Kinsey Institute's "collections" were located on the Bloomington campus.  This required relatively little walking, no stairs and was easily manageable in all types of weather conditions.

14.     Dr. Ostrowski was granted permission for flexible arrival times at work in the mornings as a reasonable accommodation, due to the fact that it took about 2 hours for her cardiac medications to take effect, and her need to perform special stretching exercises to help manage her arthritis symptoms.   She was granted permission to schedule Monday mornings and Friday afternoons for her numerous doctor visits in the Indianapolis area, as needed.

15.     The vision limitations in Dr. Ostrowski's right eye were easily accommodated with use of a large computer screen.  To address her ongoing memory loss, Dr. Ostrowski learned to depend on the Kinsey Administrative Assistant for scheduling, travel, and many daily details.  She also learned to develop "work arounds" and memory aids, such as taking and referring back to extensive notes, so she did not have to rely on her failing memory.  Dr. Ostrowski avoided tasks that required recall of names, scientific findings, source documents or cumulative data.

16.     As a result of the accommodations granted to her because of her impairments, and also because of her own abilities and wit in fighting to remain employed at an esteemed position at Indiana University, Dr. Ostrowski performed excellently as Associate Director of the Kinsey Institute, as corroborated by her performance evaluations.  Because the Director had concerns about the air quality in Morrison Hall, the Provost decided that the Kinsey Institute, its offices, laboratories and some of the "collections," would move from Morrison Hall to the Ernest Hiram Lindley Hall ("Lindley Hall").  Dr. Ostrowski's office was moved at the end of June and beginning of July, 2018.

17.     The Ernest Hiram Lindley Hall was built in 1902, as the Science Hall. In 1957 it was re-named after Ernest Hiram Lindley, a professor at Indiana University from 1893 to 1917. It is part of what is called the "Old Crescent" section of Indiana University's Bloomington campus. In 1979 Lindley Hall and the rest of the buildings in this oldest part of Indiana University's Bloomington campus were placed onto the Indiana Register of Historic Places. The building is not up to Americans with Disabilities Act regulatory standards. It is virtually inaccessible to people with disabilities, most notably those with limitations of mobility.

18.     Dr. Ostrowski's office was moved from Morrison Hall to Lindley Hall. As the relocation date approached in June, Dr. Ostrowski requested handicapped parking, by phone, so that she could park right next to, or very close to, the Lindley Hall building. Instead she was provided with maps of the IU campus showing the locations of existing parking spaces. In spite of Dr. Ostrowski seeing numerous cars and trucks parked close to Lindley Hall, on a regular basis, Dr. Ostrowski was informed by Indiana University's parking staff and administrator, Ms. Amanda Turnipseed, that her request could not and would not be granted. She was told she could park in the closest existing handicapped parking spot, if, and when, it was available, with no guarantee of any availability. Dr. Ostrowski's repeated, insistent requests and explanations of her physical need to park close to the building were ignored by those in the Indiana University Parking Office.

19.     On July 9, 2018, her first scheduled day to be onsite in Lindley Hall, she looked for the expected response to her requests: A designated handicapped parking spot close to the building. There was none. She tried to park as close to Lindley Hall as possible - and parked in a service vehicle spot, where she was ticketed that day. The walk from that parking spot is

hundreds of yards up a steep incline, including two flights of concrete stairs.  Because of her serious cardiac condition, she is warned not to walk in either very hot or very cold conditions.  The temperature that day was well into the 90s with high humidity, making her climb slow and difficult.  When she got to the building, she used the elevator to get to the 4th floor, where the Institute had relocated, and she had to walk up another small flight of stairs to get to her office.  Other employees at the Institute expressed their concern about her condition on her arrival.  She made Dr. Carter and Dr. Garcia aware of her situation.

20.   Late afternoon on July 9, 2018, after repeated failed attempts to contact the Director of Parking Office by phone, Dr. Ostrowski visited the campus Parking Office.  She spoke with several staff members and then requested to see the Director, Ms. Turnipseed.  She again stated her need, explained that she had physical limitations, was not supposed to walk in high or low temperatures and needed a parking spot close to the building.  She also stated that she had seen over a dozen vehicles parked close to Lindley Hall and stated she saw parking spaces close to the building that could be designated as handicapped spots.  Director Turnipseed told her that "there is no handicapped parking and there will be no handicapped parking."  Dr. Ostrowski responded that she felt the University had a legal duty to provide handicapped parking.  Director Turnipseed, in response, told her that it was up to Indiana University, not up to the parking office, whether to have handicapped parking as requested.

21.   Dr. Ostrowski asked Parking Director Turnipseed how to formally put forward her request and Ms. Turnipseed provided her with the Vice President of Facilities, Thomas Morrison's, name and phone number.  Dr. Ostrowski immediately called Mr. Morrison's office and conversed with his assistant regarding her parking request.  After a lengthy discussion, Dr.

Ostrowski was informed there would be no handicapped parking spaces near Lindley Hall. This initial denial by Vice President Morrison's staff was confirmed by Mr. Morrison, but he refused to put his response in writing.

22. The next day, July 10, 2018, she parked behind the Indiana Memorial Union (IMU), in a handicapped parking space that was the closest she could find to Lindley Hall. Again she struggled and slowly made the climb from the IMU to Lindley Hall, taking about a dozen standing rest breaks on the path up the two flights of stairs and then the uphill climb in sweltering heat and high humidity. She noted that many cars were parked much closer to Lindley Hall than she was and she photographed them as she climbed. Again, she was physically incapacitated by the experience. She nearly collapsed as she reached for keys to open her office door. Her colleague, Peggy, saw her distress from a few feet across the hall and invited her to sit down in her office to recover. As Dr. Ostrowski sat, her colleague pulled out file folders and started fanning Dr. Ostrowski because it was evident from her breathing, sweating and speech that she was having cardiac complications and was in terrible pain. Dr. Ostrowski heard someone suggest calling an ambulance. The Office of the Vice Provost was called and was made aware of Dr. Ostrowski's situation.

23. The third day, July 11, 2018, Dr. Ostrowski parked behind the IMU again, and in temperatures in the mid-90s struggled to make the long, and for her, arduous climb up the many stairs and along the several hundred yards of concrete walkway up to Lindley Hall. By the third day, however, in addition to being wiped-out, in severe arthritic pain, and exhausted, Dr. Ostrowski's heart rate and rhythm became extremely erratic and did not recover. She had, by then, experienced a permanent exacerbation of her cardiac and arthritic conditions. Medical

evaluations diagnosed cardiomyopathy, persistent atypical atrial fibrillation and atrial flutter, changes in cardiac function, heart failure, bone spurs and degenerative arthritis and bone remodeling of the hips.

24. This easily avoidable exacerbation of Dr. Ostrowski's medical conditions, caused by the University's refusal to accommodate her need for a closer parking space, has permanently disabled her from any future employment.

## DISABILITY DISCRIMINATION

25. Plaintiff incorporates herein by reference paragraphs 1 through 24 above.

26. The refusal of Indiana University to grant any reasonable accommodation that would have allowed Dr. Ostrowski to perform the essential functions of her employment as Associate Director of the Kinsey Institute, constitutes disability discrimination pursuant to Section 504 of the Rehabilitation Act. (29 U.S.C. § 794(a)).

27. Allowing Dr. Ostrowski the reasonable accommodation of being able to park very close to Lindley Hall would not have been unduly burdensome to Indiana University and would have prevented the disabling injury she indeed suffered as a result of attempting to soldier on in spite of the University's unreasonable denial of her parking request.

28. As a direct and proximate result of the University's denial of her accommodation request, Dr. Ostrowski has suffered career ending exacerbation of her cardiac and arthritic conditions.

29. As a direct and proximate result of the University's denial of her accommodation request, Dr. Ostrowski has suffered serious physical pain and suffering, serious and extreme

emotional damages, has become permanently disabled, and has suffered a significant loss of enjoyment of her life.

WHEREFORE, given the foregoing, Plaintiff prays for the following relief:

a. For restoration of all pay and benefits plaintiff has been deprived of by way of the illegal discrimination she has suffered, both in the past and in the future;

b. Restoration of all Indiana University privileges and rights held by other employees and/or retirees, including but not limited to her IU email account, Research Fellow status, her IU library privileges, and any other such privileges and benefits including her TIAA and Fidelity accounts;

c. Recovery of all out-of-pocket expenses incurred as a result of the illegal discrimination against her, including but not limited to such costs as group health care premiums plaintiff has had to incur;

d. Emotional damages in the maximum amount allowed by the law;

e. Costs of this action, including all reasonable attorney's fees; and

f. For all other relief proper in the premises.

Respectfully submitted,

ALLMAN LAW LLC


  /s/Joseph E. Allman
Joseph E. Allman #17214-28
Attorney for Plaintiff
Nancy L. Ostrowski

**JURY DEMAND**

      Plaintiff Dr. Ostrowski, by counsel, demands a trial by jury on all issues so triable.

      Respectfully submitted,

      ALLMAN LAW LLC


      /s/ Joseph E. Allman
      Joseph E. Allman

ALLMAN LAW LLC
One Indiana Square
211 North Pennsylvania Street
Suite 1600
Indianapolis, IN 46204
Tel: 317.608.1136
Fax: 317.833.3031
jallman@allmanlegal.com